# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 21-CV-81331

AFFORDABLE AERIAL
PHOTOGRAPHY, INC.,
a Florida corporation,
      Plaintiff and Counter-Defendant,

v.

JOHN ABDELSAYED, and
TRENDS REALTY USA CORP,
a Florida corporation,
      Defendants and Counter-Plaintiffs.

-------------------------------------------------------------------------------

JOHN ABDELSAYED, and
TRENDS REALTY USA CORP,
      Third Party Plaintiffs,

v.

ROBERT STEVENS,
      Third Party Defendant.

_____

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

      Defendants, John Abdelsayed and Trends Realty USA Corp, by and through their attorney,

Griffin Klema, Esq., and pursuant to Fed. R. Civ. P. 56, files this, their motion for summary final

judgment on plaintiff Affordable Aerial Photography's amended complaint [DE 40].

### I.     INTRODUCTION

      This copyright infringement case began on August 2, 2021, when plaintiff, Affordable

Aerial Photography Inc. ("AAP"), brought suit on a single photograph it was commissioned to

take by Old Palm Real Estate (the "Original Agent") for a property listing of the home located at

12235 Tillinghast Circle, Palm Beach Gardens, Florida ("Tillinghast" or the "Home"). Its pleading included, in-line, a copy of the photograph for which it had a registration (the "Registered Photograph").

Through discovery, it was revealed that the image which appeared on the Beaches MLS listing for the Tillinghast property was *not* the Registered Photograph, but rather a different image altogether (the "MLS Image").

This motion seeks a judgment for the defendants on AAP's 2-count copyright infringement pleading, which would bring this case to a final conclusion; the Court previously dismissed the defendants' counterclaim and third party complaint.

## II.      STANDARD FOR SUMMARY DISPOSITION

The court should grant summary judgment to defendants if there is "no genuine dispute as to any material fact" such that they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bearing the burden of proof at trial also bears the burden on summary judgment. Celotex v. Catrett, 477 U.S. 317, 327 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims." Id. at 323-24.

## III.     ARGUMENT

AAP, in its First Amended Complaint (the operative pleading), alleges one count of direct copyright infringement against John Abdelsayed ("Abdelsayed"), and one count of vicarious copyright infringement against Trends Realty USA Corp. ("Trends Realty"). [ECF 40].

To prevail on its claim for direct infringement against Abdelsayed, AAP must prove (1) ownership of a valid copyright through compliance with statutory formalities and (2) copying of constituent elements of the work that are original. Feist Publ'ns, Inc. v. Rural Tele. Serv. Co., 499

U.S. 340, 361 (1991).

To prevail on its claim for vicarious infringement against Trends Realty, AAP must prove (1) an underlying direct infringement, (2) that Trends Realty directly profited from the infringement, and (3) that Trends Realty had the right and ability to supervise the direct infringer. Metro-Goldwyn-Mayer Studios Inc. v. Groakster, Ltd., 545 U.S. 913, 930 n.9 (2005).

Both of AAP's infringement claims fail in their entirety because (**A**) AAP does not have a registration to the MLS Image and the defendants did not copy the Registered Photograph; (**B**) copying the MLS Image does not "necessarily" reproduce any protectable expression contained in the Registered Photograph; (**C**) AAP suffered no actual damages within the three-year statute of limitations; (**D**) AAP cannot prove it suffered any disgorgement damages because enhanced attractiveness of a website by marginal use of an image does not confer a financial benefit on the website owner; and (**E**) the statute of limitations makes AAP's claims time-barred because it did not bring suit within three years of the defendants' last volitional act of infringement.

### A. AAP's claim fails as a matter of law under § 411(a) because the MLS Image is not registered, and defendants did not have access to the Registered Photograph such that they could not have copied it.

Pursuant to the plain language of the Copyright Act, a registration for a work is a prerequisite to bringing suit for infringement on that work. Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC, 139 S.Ct. 881, 887 (2019) ("registration is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights").[1]

---

[1] In Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154 (2010) the court explicitly indicated it was not deciding whether district courts should *sua sponte* dismiss claims for unregistered works. Id. at 171. However, Fourth Estate makes clear that a registration is absolutely required by the plain language of §411(a). Courts subsequent to Muchnick have concluded that requirement is both found in the plain meaning of the statute, and consistent with the requirements of Fourth Estate.

As the Supreme Court made clear, "§411(a) bars a copyright owner from suing for infringement until 'registration ... has been made.'" Id. at 888 (quoting the Copyright Act). Importantly, it is what the Register of Copyrights does—that is, it is *its* action "that triggers a copyright owner's entitlement to sue;" it is not the owner's conduct that determines whether suit can be brought. Id. at 890. Thus, the "general rule [is] that registration must precede an infringement suit." Id.

The Eleventh Circuit and its district courts have long recognized these statutory claims-processing requirements.[2] E.g., Kernel Records Oy v. Mosley, 694 F.3d 1294, 1303-05 (11th Cir. 2012) ("without a certificate of registration, [plaintiff's] infringement suit was over before it began"); Watson v. K2 Design Group, Inc., No. 15-CV-61020, 2015 WL 4720797, at *3 (S.D. Fla. Aug. 7, 2015) ("the explicit language of § 411(a) provides a statutory bar to suit which requires a plaintiff to first obtain **registration *for the work* at issue** prior to initiating suit") (emphasis supplied); Davis v. Tampa Bay Arena, Ltd., No. 8:12-CV-60-T-30MAP, 2012 WL 2116136, at *3 (M.D. Fla. June 11, 2012) ("registration of a copyright is a mandatory precondition to suit for copyright infringement"); Roig v. Star Lofts on the Bay Condo. Ass'n, Inc., No. 11-cv-20421, 2011 WL 6178882, at *2 (S.D. Fla. Dec. 12, 2011) (a plaintiff "must register the copyright before filing a civil action for copyright infringement"); Marc Anthony Builders, Inc. v. Javic Props., LLC, No. 11-cv-00432, 2011 WL 2709882, at *2 (M.D. Fla. July 12, 2011) ("the Copyright Act expressly prohibits bringing an infringement action without first obtaining registration, it is a mandatory precondition, and this action should be dismissed if it is not met").[3]

---

E.g., Malibu Media, LLC v. Doe, No. 18-CV-10956, 2019 WL 1454317 (S.D.N.Y. Apr. 2, 2019) (collecting cases).

[2] Lack of a valid registration is not an affirmative defense. Instead, it is the plaintiff's burden. Kernel Records Oy v. Mosley, 694 F.3d 1294, 1301 (11th Cir. 2012) ("Without proof of compliance with required statutory prerequisites, Kernel's case was not properly commenced.").

[3] Importantly, this requirement also holds true for suit on any derivative works. The Copyright Act reinforces that a derivative it its own "work" that must be registered. 17 U.S.C. § 411(c)(2)

The reason for this restriction on enforcement is to incentivize registration, which became optional upon the 1976 amendment to the Copyright Act. See H.R. Rep. No. 1476, 94th Cong., 2d Sess. 158, reprinted in 1976 U.S. Code Cong. & Adm. News 5659, 5774. Not only did congress take away certain remedies (statutory damages and attorney's fees) under §412 for failing to timely make registration, it also locked the courthouse doors to copyright owners who had no registration for the work, belated or not. Id. It was not the congressional intent to loosely allow a plaintiff to summon the heavy hand of the law against alleged infringers merely because it had *a* registration, regardless of whether that registration concerned the alleged infringing conduct or not. Stated differently, §411(a), as construed in Fourth Estate, requires a plaintiff at the outset of a case to show it has a registration covering the subject work. Any registration will not do. That is especially true for the visual works at issue here.

Here, there is no dispute that the defendants did not copy the Registered Photograph. Def. Statement of Undisputed Fact [ECF 109] at ¶ 15. There is no registration for the MLS Image. Def. Statement of Undisputed Fact [ECF 109] at ¶¶ 16-17. And the two images are different. Def. Statement of Undisputed Fact [ECF 109] at ¶¶ 3-6, 13-14. Absent a registration to the MLS Image or proof that the defendants copied the Registered Photograph, AAP cannot maintain this suit under §411(a) because it does not have the former and it cannot prove the latter.

There is no statutory exception for bringing suit on "close enough" registrations,[4]

---

(referring to that which must be registered under (a) as "the work"); see also 17 U.S.C. § 101 ("where [a] work has been prepared in different versions, each constitutes a separate work"). Moreover, Fourth Estate casts serious doubt on Montgomery v. Noga, 168 F.3d 1282, 1294 (11th Cir. 1999) to the extent Montgomery suggests §411(a) is satisfied when suit is brought for infringement of a derivative work based on a registration to an underlying original work. Nevertheless, Montgomery is distinguishable because software code (text, symbols, and numerals) is not like visual imagery, each of which is a singular whole work and represents the indivisible cumulative totality of discrete creative choices in its making.

[4] See footnote 3, *supra*.

especially with regard to photographs of an environment. The exclusive list of exceptions to the absolute pre-suit registration requirement are only (1) non-US works; (2) *pre*registration for certain works; (3) where the Register of Copyrights has refused registration; and (4) action for registration within three months after first transmission. Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 165 (2010). No such exception exists here, and courts are not at liberty to engraft additional non-statutory exemptions where Congress has definitively spoken.

The facts in this case are most closely aligned with those in Psihoyos v. John Wiley & Sons, Inc., 748 F.3d 120 (2d Cir. 2014). There, the plaintiff brought suit "alleging that Wiley had infringed his copyright in eight photographs, including ... two photographs of a narcoleptic dog." Id. at 122. However, the plaintiff "would later realize [the two registered photos] were similar to but not the same as the Narcoleptic Dog photos Wiley had admitted to using without authorization." Id. Wiley moved for summary judgment, arguing that the plaintiff had not registered the images it had used, notwithstanding their similarity to the registered images. Id. at 123. The trial court denied plaintiff's request to amend the pleading to allege infringement of the belatedly registered images, and "granted partial summary judgment in Wiley's favor as to the infringement claims relating to the Narcoleptic Dog." Id. The Second Circuit affirmed judgment for the defendant on the unregistered images and affirmed the trial court's denial of leave to amend the complaint. Id.

In a slightly different factual context, the plaintiff in Well-Made Toy Mfg. v. Goffa Int'l Corp., 354 F.3d 112 (2d Cir. 2003) could not maintain an action for infringement of a similar but unregistered version of its doll. "Well-Made had registered its copyright in the 20-inch doll but not in the larger, derivative one." Id. at 113. Well-Made alleged that the defendant had copied the larger derivative doll. Id. The Second Circuit rejected the plaintiff's argument that its registration

to the original, smaller doll, supported its claim for infringement of the larger derivative, holding that "**registration of a claim on an original work does not [satisfy §411(a)] with respect to a suit for infringement of the original's unregistered derivative**." Id. at 115 (emphasis supplied); accord Murray Hill Publ'ns, Inc. v. ABC Commc'ns, Inc., 264 F.3d 622, 631 (6th Cir. 2001) ("before an infringement suit can be sustained based on the derivative work, that derivative work must be registered"). District courts have held similarly. KnowledgeAZ, Inc. v. Jim Walters Resources, Inc., 617 F.Supp.2d 774, 788 (S.D. Ind. 2008) ("this court is convinced that the Seventh Circuit would agree with the Second, Sixth and Eleventh Circuits, which have all concluded that **a derivative work must be registered to allow the producer of that work to pursue an action based on infringement of that specific derivative work**"); Dalton Ross Homes, Inc. v. Williams, 2007 WL 2461892 (D.Ariz. Aug. 29, 2007) (same).

In this District specifically, Judge Seitz held, just as in Well-Made Toy, that a derivative registration might, at best, extend protection backwards to an earlier work upon which a derivative is based, but "[t]he reverse is not true" and making clear that "[t]here is no legal support for the view that prior copyrights would extend their [] protections forward to encompass future derivative designs." Oravec v. Sunny Isles Luxury Ventures, L.C., 469 F.Supp.2d 1148, 1163 (S.D. Fla. 2006). The Eleventh Circuit affirmed, holding that the plaintiff's "reliance on the effective registration doctrine is misplaced." Oravec v. Sunny Isles Luxury Ventures, L.C., 527 F.3d 1218, 1229 (11th Cir. 2008).

All the foregoing decisions are consistent with the plain reading of §411(a), as construed in Fourth Estate, which requires a registration to a work prior to bringing suit on *that* work,

irrespective of whether it is a derivative of an earlier work or not.[5] Accordingly, the result reached in <u>Psihoyos</u> should obtain here on the near identical facts of this case.

AAP is no stranger to copyright enforcement. [ECF 73-1] at ¶7; <u>see also</u> <u>Minden Pictures, Inc. v. Buzzfeed, Inc.</u>, 390 F.Supp.3d 461, 467 (S.D.N.Y 2019) (concluding that a "seasoned litigatior" of copyright infringement suits "should have discovered, with the exercise of due diligence, that its copyright was being infringed within the statutory time period"). Nor is it novice in real estate photography. Def. Statement of Undisputed Fact [ECF 109] at ¶ 12. AAP knows full-well that it takes multiple different photographs for a real estate listing, and for the Tillinghast property, it had each and every single image in its possession since it first provided them to the Original Agent in January 2016. Def. Statement of Undisputed Fact [ECF 109] at ¶ 33. Among them are *both* the registered image and the MLS image. Def. Statement of Undisputed Fact [ECF 109] at ¶ 34. And they are different images. Def. Statement of Undisputed Fact [ECF 109] at ¶ 13. AAP has admitted they are different images; its corporate representative testified that it does not provide duplicate images to its clients. Def. Statement of Undisputed Fact [ECF 109] at ¶ 14. AAP further claims that the "minute details" are important to photographs and such details include "specifically placed flowers." Def. Statement of Undisputed Fact [ECF 109] at ¶ 9. The flower detail between the registered photograph and MLS image is demonstrably different. Def. Statement of Undisputed Fact [ECF 109] at ¶ 10. So too are there dates of creation, and the file properties of each digital image are completely different in all respects. Def. Statement of

---

[5] AAP has not alleged any relationship whatsoever between the Registered Photograph and the MLS Image, and by making this argument, defendants do not concede any relationship whatsoever between the two images because that was neither AAP's theory nor was any such issue developed during discovery. It is entirely unknown what relationship, if any exists between the Registered Photograph and the MLS Image because that was not developed in discovery. Any attempt now by AAP to claim there is a relationship would be highly prejudicial to the defendants, necessitating reopening of discovery to address this entirely new and unpled theory.

Undisputed Fact [ECF 109] at ¶¶ 4 and 6.

AAP chose to bring suit on a singular image and alleged infringement of *that* specific photograph. [ECF 40] at ¶ 17. It alleged defendants had in their possession and cropped that specific image. [ECF 14] at ¶ 26. But the evidence shows that allegation is not and cannot be true. Nor can AAP show that Abdelsayed had access to or copied the Registered Photograph, even if he did reproduce the MLS Image. No matter what theories AAP attempts to now assert—theories that would necessarily contradict the allegations of its amended complaint—there is no dispute that AAP does not have a registration for the MLS Image. Def. Statement of Undisputed Fact [ECF 109] at ¶ 16. Consequently, its claim for infringement based on its registration to a different work fails, just as the plaintiff in Psihoyos could not maintain his action on his own "similar" images, nor could the plaintiff doll maker in Well-Made Toy. Oravec is consistent with the rationale of those cases, and all of them are consistent with the plain language of §411(a) and Fourth Estate. Accordingly, AAP's infringement claims fail as a matter of law as a result of its non-compliance with the statutory formalities and administrative exhaustion requirements of 411(a).

**B. AAP'S claim also fails because copying the MLS Image does not "necessarily" copy any protectable expression contained in the Registered Photograph.**

It is not a foregone conclusion that any given photograph is copyrightable, or what the scope of its protectable elements is, if any. Cf. Feist Publ'ns, Inc. v. Rural Tele. Serv. Co., 499 U.S. 340, 361 (1991) (originality means that a work "possesses at least some minimal degree of creativity"); Rentmeester v. Nike, Inc., 883 F.3d 1111, 1120 (9th Cir. 2018) (defining a spectrum of originality in photos); Harner v. Wong Corp., no. 12-cv-00820 (D.N.M. Oct. 31, 2013) (finding utilitarian photographs not copyrightable); Kim Seng Co. v. J & A Importers, Inc., 810 F.Supp.2d 1046 (C.D. Cal. 2011) (limited range of choices in depicting food rendered the work unoriginal);

Custom Dynamics, LLC v. Radiantz LED Lighting, Inc., 535 F.Supp.2d 542 (E.D.N.C. 2008) ("there is no 'creative spark' involved in a purely descriptive picture of a product") Oriental Art Printing v. Goldstar Printing Corp., 175 F.Supp.2d 542 (S.D.N.Y. 2001) (similar); SHL Imaging, Inc. v. Artisan House, Inc., 117 F.Supp.2d 301, 309 (S.D.N.Y. 2000) ("no work is per se protectible").[6]

When only a narrow range of expression is possible, copyright protection is "thin" because the copyrighted work will contain few protectable features. Rentmeester v. Nike, Inc., 883 F.3d 1111, 1120 (9th Cir. 2018). This is true even if the work is "beautiful." Satava v. Lowry, 323 F.3d 805, 811 (9th Cir. 2003). Where choices are constrained by "convention or subject matter" then that narrows "the range of creative choices that can be made." Rentmeester, 883 F.3d at 1120. The Rentmeester court characterized its prior holding in Mattel, Inc. v. MGA Entm't, Inc., 616 F.3d 904 (9th Cir. 2010) as representing a "spectrum" of protection for photographs, and as an example of the "thin end" indicated that there were "only so many ways to paint a red bouncy ball on blank canvas." If there is a wide range of expression, and a work will infringe if it is substantially similar, while if the ranges narrow than a work must be virtually identical to infringe. Id. The Rentmeester court also cited to its earlier decision in Ets-Hokin v. Skyy Spirits, Inc., 323 F.3d 763 (9th Cir. 2003) (a "product shot" of a blue liquor bottle) to further illustrate that a photograph's original expression is correspondingly narrow when "the range of creative choices available in selecting and arranging the photo's elements is quite limited." Rentmeester, 883 F.3d at 1120. Although a

---

[6] To be clear, the defendants are not arguing here that either the MLS Image or the Registered Photograph are not copyrightable at all (which they reserve for trial, if judgment is not entered in their favor), but rather whatever protectable elements they may contain are separate and independent from one another such that copy the MLS Image does not "necessarily" infringe any protectable expression found in the Registered Photograph. whether any given work "is sufficiently original to merit copyright protection [at all] is a question of fact." Home Legend, LLC v. Mannington Mills, Inc., 784 F.3d 1404, 1409 (11th Cir. 2015).

photograph's copyrightable elements may include "lighting, camera angle, depth of field ... timing, and shutter speed," id. at 1119, when the protectable expression is thin, only the unified whole is protected, that is to say, each thinly copyrightable image constitutes its own independent expressive result and is infringed only if identical. That is because individual elements are not "subject to copyright protection when viewed in isolation" due to the very nature of photographs, which "cannot be dissected into protected and unprotected elements in the same way" as literary works. Id. Rather, it is the "combination" of protectable expression, and "not any of the individual elements standing alone." Id.; accord SHL Imaging, Inc. v. Artisan House, Inc., 117 F.Supp.2d 301 (S.D.N.Y. 2000) (originality is found in "the totality" of a photographer's individual choices).[7]

In Mannion v. Coors Brewing Co., 377 F.Supp.2d 444 (S.D.N.Y. 2005), Judge Kaplan provided a framework for what aspects of photographs make them original, and thus copyrightable. He identified three categories that reflect how a photograph might be original: "rendition," "timing," and "subject," and then classified prior copyright cases according to what those cases held with respect to originality. Id.

Applying the Mannion categories here, it becomes immediately apparent that the only originality potentially embodied in either the Registered Photograph or the MLS Image is that in the rendition, and that originality is thin such that the Registered Photograph and the MLS Image constitute separate works with no overlap in protectable expression.

---

[7] A theoretical example may illustrate how two photographs, even effectively identical ones, are each their own work where copyright protection is thin: Suppose there are two tourists visiting the ruins of the Temple of Venus and Rome. The first takes a photograph of the nearby Roman Colosseum, and a second tourist sees the first and decides to capture the same scene from the same spot where the first was standing. No people are in the image; no moving objects. Merely the structure of the ancient building. The resulting images are effectively indistinguishable from one another. Yet the second tourists' photograph does not infringe the first's because her image has (at least in theory) some protectable expression in the *rendition*. Neither can claim originality with regard to Colosseum depicted (subject matter) and no people or moving things are present (timing).

First, there is no originality in subject matter. AAP did not choose the Tillinghast property as the subject matter to photograph, the Original Agent did. Def. Statement of Undisputed Fact [ECF 109] at ¶ 33. AAP did not build the Home. Def. Statement of Undisputed Fact [ECF 109] at ¶ 32. AAP also did not have a choice in what part of the property to photograph. Def. Statement of Undisputed Fact [ECF 109] at ¶ 22. It was required to capture the front entry of the property because MLS property listings require a such an image. Def. Statement of Undisputed Fact [ECF 109] at ¶ 22.[8] For the same reasons, AAP could not include any people or pets in its photographs. Def. Statement of Undisputed Fact [ECF 109] at ¶ 25. Instead, it was limited in taking photographs that "display[ed] only physical characteristics of the subject property and its vicinity." Def. Statement of Undisputed Fact [ECF 109] at ¶ 25. The weather at the moment which AAP happened to be at the property also has no bearing on originality with regard to subject. Mannion 377 F.Supp.2d at 455 ("the existence of a cloudy sky is not original"). Accordingly, there is no subject matter originality.

Second, the timing of the images was not original either. Mannion's "timing" category refers to that of "being at the right place at the right time." Mannion, 377 F.Supp.2d at 452. Old Palm Real Estate, just like most agents, required nice-looking photographs of the Home. Def. Def. Statement of Undisputed Fact [ECF 109] at ¶¶ 34, 49. Robert Stevens went to the Tillinghast only with the coordinated permission of Old Palm. Def. Statement of Undisputed Fact [ECF 109] at ¶ 35. Moreover, photographing the Home while it was unkempt, the landscape not recently manicured, or during a rainstorm were simply not options for AAP. Def. Statement of Undisputed Fact [ECF 109] at ¶ 49. The commission-based relationship between AAP and the Original Agent

_____

[8] This is generally true for almost all multiple listing services. Even a cursory review of listings by aggregator Zillow reveals that the very first image on almost every property listing is the front exterior of the home.

bespeaks the highly constrained choices that AAP had on all forms of originality. The invoice reflects what the Original Agent specified for its requirements, and the invoice here specified that the Tillinghast images also include night photography. Def. Statement of Undisputed Fact [ECF 109] at ¶ 30, 31, 40, 41. Therefore, the Tillinghast photographs do not embody originality with respect to timing.

Third, AAP also did not have much, if any, creative flexibility in the rendition because the front exterior necessarily had to be "accurately depict[ed]" according to the MLS Rules and thus by the Original Agent. Def. Statement of Undisputed Fact [ECF 109] at ¶ 22. Elements such as depth of field, lighting, and choice of angle were all correspondingly circumscribed by the very nature of the type of photographs were being taken: Commissioned real estate property listing images whose goal was to sell the property. Def. Statement of Undisputed Fact [ECF 109] at ¶¶ 23 and 37. The Tillinghast photos were therefore akin to the images in <u>Oriental Art Printing</u>, <u>Custom Dynamics</u>, and <u>Ets-Hokin</u>.

Specifically with regard to "orientation" and "angle" to have copyrightable originality in a photograph, they must constitute something more than typical viewpoints or locations.[9] <u>Compare Fulks v. Knowles-Carter</u>, 207 F.Supp.3d 274 (S.D.N.Y. 2016) (left-facing subject and photographed "from the left ... are so general that they rise to the level of unprotected ideas"), <u>with Mannion</u> 377 F.Supp.2d at 455 (finding originality in the rendition as a result of "relatively unusual angle and distinctive lighting"). Orientation and angle here, circumscribed by the requirements of the MLS Rules and Regulations, resulted in a clear and straight-on image of the home. Def.

---

[9] Some cases refer to these non-protectable elements pursuant to the doctrines of merger and *scènes à faire*. E.g., <u>Rentmeester</u>, 883 F.3d at 1118 ("*scènes à faire* [which are] stock or standard features that are commonly associated with the treatment of a given subject" are "unprotectable elements") (citing to <u>Cavalier v. Random House, Inc.</u>, 297 F.3d 815, 822 (9th Cir. 2002).

Statement of Undisputed Fact [ECF 109] at ¶ 22. Those choices simply do not embody originality, and are typical of real estate listings.

Lighting was also not something AAP selected because the Original Agent commissioned "night photography" for the home—twilight exterior images that frequently appear on real estate listings which capture the alluring "golden hour" evening moments when exterior color is at its peak and both interior and exterior lighting all come into balance. Def. Statement of Undisputed Fact [ECF 109] at ¶ 31. That's precisely what is found in most luxury real estate listings and unremarkably embodied in Registered Photograph. Def. Statement of Undisputed Fact [ECF 109] at ¶ 49.

AAP also acknowledges that its goal with taking photographs is to "provide a natural feel" in its photography." Def. Statement of Undisputed Fact [ECF 109] at ¶ 9. But capturing the natural environment, absent some significant and unique contribution, does not rise to the level of sufficient originality for copyright protection. Satava v. Lowry, 323 F.3d 805, 811 (9th Cir. 2003) (rejecting copyright ability of natural depictions because "a combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that the combination constitutes an original work of authorship"). Trivial variation and negligible originality are insufficient. Id. at 810. AAP's photographs, attempting to capture the "natural" state of the Tillinghast home simply do not warrant anything more than the most narrow of copyright protection, if at all. AAP may have made certain creative choices in preparing the Tillinghast photographs, but those choices were minimal.

Even the process by which AAP creates its images is not unique to it, further emaciating any originality in the rendition, especially with regard to lighting. SHL Imaging, Inc. v. Artisan House, Inc., 117 F.Supp.2d 301, 309 (S.D.N.Y. 2000) (a photographer cannot prevent others from

"using the same lighting techniques").[10] The techniques used to create a "natural looking" photograph of real estate are well-known (high dynamic range or HDR photography, also known as flash ambient or "flambient") with web pages and YouTube tutorials on how to accomplish the effect with Adobe Photoshop. Def. Statement of Undisputed Fact [ECF 109] at ¶ 53. Due to the laborious effort required, AAP outsources that mechanical processing to a studio overseas, which charges $1 per image. Def. Statement of Undisputed Fact [ECF 109] at ¶ 51. Cursory review of other photographs on real estate listings reveals the same "quality" that agents expect from their photographers. Def. Statement of Undisputed Fact [ECF 109] at ¶ 49.

At bottom, whatever originality in the rendition exists in the Tillinghast photos is therefore as thin as it can get.

By way of contrast, the real estate photographs AAP takes are not creative marketing pieces. They are not like the billboard in Mannion or (less so) like the vodka bottle in Ets-Hokin v. Skyy Spirits, Inc., 323 F.3d 763 (9th Cir. 2003) ("there are not very many" ways one can create a "product shot" advertising photograph). Its images are more closely aligned with the exceedingly thin protection afforded to still product shots like those in SHL Imaging, 1178 F.Supp.2d at 311 (finding that the plaintiff's marketing photographs "meet the minimal originality requirements" such that "they are not entitled to broad copyright protection," and consequently the "plaintiff is granted copyright protection only for its 'incremental contribution' such that his "works are only protected from verbatim copying"); see also 4 NIMMER ON COPYRIGHT § 13.03(A)(4) ("At the limiting case of 'the thinnest of copyright protection,' entire duplication would be required.").

Whatever original expression might be embodied in either the Registered Photograph or

---

[10] It is also worth noting that copyright ability does not arise from "sweat of the brow" effort. It is only the creative spark for which the law affords protection. Feist, 499 U.S. at 352-54.

the MLS Image, it is exceedingly thin to the point that infringement would only occur if one photograph were *exactly* identical to the other. Here, they are not. Because the MLS Image was not a verbatim copy of the Registered Photograph, any reproduction of the MLS Image did not necessarily infringe any protectable element embodied in the Registered Photograph. As a matter of undisputed fact, the MLS Image cannot be infringingly related to the Registered Photograph: copying one does not copy the original elements of the other; each image stands alone as its own work given the slender originality on which their independent copyrightability rests (if at all).

### C. AAP's claim fails because it cannot prove a compensable injury where no copying occurred during the 3-year statute of limitations damages period and even if there were, the value of the MLS Image is at most $7.86.

Next, AAP's claim fails for an entirely separate reason: it cannot prove actual damages because the hypothetical negotiation between it and the defendants would necessarily have occurred outside the damages limitations period and thus such a recovery is barred by Section 507. And even if not completely barred, AAP's actual damages are limited. It has *never* licensed its commissioned real estate images to any third party in a bona fide arms-length (non-commissioned) transaction. The only license to the MLS Image in particular was to the Original Agent that commissioned its creation, and when its proportional value on a per-image basis ($7.86) is compared to the next best non-infringing alternative (actual market for a routine real estate photograph), is consistent with the amount that willing buyers and sellers bargain for, ranging from $0 to $12 for a worldwide perpetual, royalty-free fully paid-up non-exclusive license. Def. Statement of Undisputed Fact [ECF 109] at ¶ 48.

Actual damages suffered by a copyright owner are "usually" or "primarily" measured by the loss of value to the copyrighted work when the infringement occurred. Home Design Servs., Inc. v. Turner Heritage Homes, Inc., 101 F.Supp.3d 1201, 1217 (N.D. Fla. 2015); Thornton v. J

Jargon Co., 580 F.Supp.2d 1261 (M.D. Fla. 2008) (collecting cases); accord McRoberts Software, Inc. v. Media 100, Inc., 329 F.3d 557, 566 (7th Cir. 2003).

Although the Eleventh Circuit has not adopted a specific standard for the measure of actual damages, the Third Circuit has concluded that the case law "supports using the fair market value" approach. Leonard v. Stemtech Int'l Inc., 834 F.3d 376, 390 (3rd Cir. 2016). A copyright owner's aspirational revenues or subjective desires of what the fee *should* be have no place in the analysis because the "question is not what the owner would have charged, but rather what is the [objective] fair market value." On Davis v. The Gap, Inc., 246 F.3d 152, 166 (2d Cir. 2001); accord Mackie v. Rieser, 296 F.3d 909, 917 (9th Cir. 2002). For the same reasons, a fair market value does not represent "the highest use for which plaintiff might license but the use the infringer made." On Davis, 246 F.3d at 166 n.5.

As more fully argued *infra*, Section E, the MLS image which Abdelsayed uploaded to Trends Realty's website occurred at a time outside the 3-year statutory damages look-back period. By operation of §507, a plaintiff's damages are limited to those occurring within the three years immediately preceding the date suit was filed. Petrella v. Metro-Goldwyn-Mayer, Inc., 572 U.S. 663, 670 (2014); Sohm v. Scholastic Inc., 959 F.3d 39, 52 (2d Cir. 2020) ("the three-year limitation on damages was necessary to the result in Petrella and thus binding precedent"). Because a "plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period," Klehr v. AO Smith Corp., 521 U.S. 179, 190 (1997), here AAP cannot recover damages for Trends Realty's act of uploading (reproducing) the MLS Image, which occurred prior to August 2, 2018. Def. Statement of Undisputed Fact [ECF 109] at ¶¶ 20-21. It would only have been at that moment, in March 2018, when the hypothetical licensing would have occurred, and thus at that time when AAP would

have lost its licensing revenue damages. <u>Montgomery v. Noga</u>, 168 F.3d 1282, 1294 (11th Cir. 1999) (§504(b) "requires [a] plaintiff to demonstrate a 'causal connection' between the defendant's infringement and an injury to the market value of the plaintiff's copyrighted work **at the time** of infringement) (emphasis supplied); <u>Jarvis v. K2 Inc.</u>, 486 F.3d 526, 534 (9th Cir. 2007) (observing the hypothetical negotiation establishing the lost licensing damages must be viewed "at the hypothetical time of sale"); <u>see also</u> <u>Fitzgerald Publ'g Co. v. Baylor Publ'g Co.</u>, 807 F.2d 1110, 1118 (2d Cir. 1986) (market value is determined "at the time of the infringement"). Therefore, pursuant to <u>Klehr</u>, AAP cannot prove lost licensing revenue—revenue damages which necessarily were "incurred" by AAP on the date Abdelsayed reproduced the work without paying a licensing fee.

Here, AAP licensed 88 different images plus two videos to the Original Agent in exchange for a one-time fee of $899. Def. Statement of Undisputed Fact [ECF 109] at ¶ 38. Specifically as to non-aerial images, AAP charged $400, with an addition fee of $150 for "Night Photography." Def. Statement of Undisputed Fact [ECF 109] at ¶ 40. Of the 88 images, 70 were non-aerial shots (65 of the Tillinghast property plus five stock images). Thus, for the seventy images AAP provided to the Original Agent, at $550 for ground-based still images, the corresponding per-photo actual market fee it charged equates to $7.86.

That amount is similar to what AAP charged for other commissioned real estate photographs in the same neighborhood (so-called "benchmark" licenses, <u>Thornton</u>, 580 F.Supp.2d at 1261), including $79 for "Exterior Photography." Def. Statement of Undisputed Fact [ECF 109] at ¶ 42. Its most recent invoice shows that its pricing has actually *decreased* to $699, while the services it offered increased. Def. Statement of Undisputed Fact [ECF 109] at ¶ 44.

Furthermore, AAP previously attempted (but failed) to license its photographs to third

parties on a website it developed specifically for that purpose, stockimagedepot.com. Def. Statement of Undisputed Fact [ECF 109] at ¶ 45. AAP offered a license to customers purchasing images on that site which allowed them to use AAP's images without any restrictions whatsoever other than to not resell or sublicense them. Def. Statement of Undisputed Fact [ECF 109] at ¶ 46. And it offered that license to customers for as little as $44.55.[11] Def. Statement of Undisputed Fact [ECF 109] at ¶ 47. For reasons unclear, the market demand for AAP's photographs was non-existent. AAP was unable—despite proclamations of being a photographer to the stars—to license its routine real estate or stock photography to third parties who did not commission the work's creation. It doesn't have a single license to equivalent images that it can introduce into evidence in support of its actual damages. Not one. And there are no customers or licensees that it lost because the MLS Image was on the defendants' website. Def. Statement of Undisputed Fact [ECF 109] at ¶ 36.

Moreover, AAP has not retained an expert to opine on any damages issues, be it AAP's lost licensing revenue or a causal relationship between the MLS image and defendants' profits. Without any expert analysis whatsoever on the issue of its damages, any claim by AAP fails for want of adequate proof and would be based entirely on undue speculation.

The undisputed facts also show that similar stock images of luxury homes at night can readily be licensed (in perpetuity for website marketing purposes) in exchange for a one-time fee of $12 (iStock Photo) or $9.80 (Shutterstock).[12] Def. Statement of Undisputed Fact [ECF 109] at

---

[11] By purchasing AAP's 1000 "credits" pack for $4,500, and using 99 of those credits to license an image.

[12] These sources represent the "best noninfringing alternative" and thus AAP cannot prove causation as to its lost licensing fees for this independent reason. Cf. Panduit Corp. v. Stahlin Bros. Fibre Works, 575 F.2d 1152 (6th Cir. 1978) (before a patent owner can recover lost profits damages, it must prove the absence of acceptable noninfringing substitutes available in the

¶ 48. Other similar images are altogether *free* (Pexels, Unsplash, Pixabay). Id.

The evidence is clear and undisputed that the objective market value of a single architectural photograph, even good ones, is nominal—whether measured (a) by AAP's own licensing to the Tillinghast photos, (b) by its failed online stock photography website, or (c) by well-known stock photography companies. Any actual damages beyond the $7.86 license fee it received for the MLS image is purely speculative, even if it is entitled to actual damages assuming such damages exist within the three-year limitations period.

### D. AAP cannot prove any causal connection between the alleged infringement and the defendants' profits because enhanced attractiveness of a website does not confer a financial benefit on the website owner.

As for the disgorgement remedy, a copyright owner must prove an amount of an infringer's profit that is "reasonably related to the infringement." On Davis v. The Gap, Inc., 246 F.3d 152, 160 (2d Cir. 2001). That figure does not include "unrelated revenues." Id. More importantly, the "plaintiff must show that the *infringement itself*—that is, the use of the plaintiff's work—was causally linked to the gross revenue claimed." Thornton v. J Jargon Co., 580 F.Supp.2d 1261 (M.D. Fla. 2008) (emphasis in original); cf. Jordan v. Time Inc., 111 F.3d 102, 104 n.2 (profits must be "*directly* attributable" to the infringement) (emphasis supplied). That causality requirement derives directly from the language of the statute, which uses the term "attributable" to connect profits and infringement. 17 U.S.C. § 504(b). And even where plaintiff may claim disgorgement of profits, the amount may not exceed the plaintiff's own lost profits. 4 *Nimmer* § 14.03 ("there may be a recovery of defendant's profits in an amount equal to (**but not more than**) the amount by which defendant's profits exceed plaintiff's lost profits") (emphasis supplied).

---

market); but see Deltak, Inc. v. Advanced Sys., Inc., 767 F.2d 357, 362 n.3 (7th Cir. 1985) (questioning the application of the Panduit factors to copyright infringement).

A copyright owner's burden is especially high where an infringer's profits are "indirect"— that is, where the alleged infringer has not sold the copyrighted work itself. See Mackie v. Rieser, 296 F.3d 909, 914 (9th Cir. 2002) (indirect profits have a "more attenuated nexus to the infringement"). That is the case here.

The defendants did not sell the MLS Image. Def. Statement of Undisputed Fact [ECF 109] at ¶ 50. Instead it was one of at least seven which was only momentarily viewable on homesofthepalmbeaches.com. Def. Statement of Undisputed Fact [ECF 109] at ¶ 21. The carousel of images continually rotated, such that the MLS Image was only visible one-ninth of the time on the page. Def. Statement of Undisputed Fact [ECF 109] at ¶ 21. Consequently, it added at best only a marginal element of attractiveness to the website. But mere enhanced attractiveness of a website is causally insufficient to allow a plaintiff to recover profits from a vicariously liable party.

In Erickson Productions, Inc. v. Kast, 921 F.3d 822 (9th Cir. 2019), the plaintiff could not recover disgorgement damages from a defendant's use of a photograph on its website because the infringing material was "'just an added benefit,' rather than a draw." Id. at 829. Though the court analyzed those damages pursuant to a claim for vicarious liability, the same holds true for direct infringement disgorgement because they share the requirement that there be a "causal relationship between the infringing activity and" either the "financial benefit" or "profits." Compare id. with Thornton v. J Jargon Co., 580 F.Supp.2d 1261 (M.D. Fla. 2008) (collecting cases regarding burden of proof on actual damages). Additionally, the trend has been that cases are "more frequently deny[ing] profits" earned from advertising that incorporates infringing copyrighted material. 4 Nimmer on Copyright § 14.03. At a minimum, AAP's vicarious copyright infringement claim against Trends Realty fails under Kast and Thornton and should fail with regard to Abdelsayed as well.

Indeed, because of the "highly speculative nature of all indirect profits claims such as those at issue here, the decision to send[ ] such claims to a jury should be extremely rare." Int'l Bus. Machs. Corp. v. BGC Partners, Inc., No. 10-cv-128, 2013 WL 1775437, at *3 (S.D.N.Y. Apr. 25, 2013) (quotations omitted) (emphasis added) (granting alleged infringer's motion to bar recovery of profits); see also Mager v. Brand New School, No. 03-cv-8552, 2004 WL 2413978, at *4 (S.D.N.Y. Oct. 28, 2004) (granting alleged infringer's motion for partial summary judgment on profits "because there is simply no logical or evidentiary connection between the alleged violations and the [alleged infringer's] profits") (quotation omitted); DaimlerChrysler Servs. v. Summit Nat'l, No. 02-cv-71871, 2006 WL 208787, at *4 (E.D. Mich. Jan. 26, 2006) (recognizing "heightened initial burden on the copyright holder where profits are indirect").

"[T]o survive summary judgment on a demand for indirect profits pursuant to § 504(b), a copyright holder must proffer sufficient nonspeculative evidence to support a causal relationship between the infringement and the profits generated indirectly from such an infringement." Mackie, 296 F.3d at 915-16.

Because AAP cannot meet its burden irrespective of Kast, defendants are entitled to summary judgment against AAP on its infringement claims in their entirety because it cannot prove any disgorgement damages, even if AAP could prove it has a registration covering the MLS image or that defendants copied the registered image (which it cannot).

### E. AAP's claims fail because they are time-barred in their entirety under the three-year statute of limitations, consistent with Petrella v. MGM, Webster v. Dean Guitars and Wolf v. Travolta.

Finally, assuming (1) AAP has a copyright registration, (2) that the defendants copied original elements of that registered work, and (3) that AAP suffered non-speculative compensatory damages during the 3-year lookback period, AAP's claims for copyright infringement still fail as

a matter of law by operation of the three-year statute of limitations, the volitional conduct rule, and AAP's admission that it "***does not*** allege any pre-registration ***direct infringement*** by Defendants." [ECF 66] at p.8 (emphasis in original). The requirement of a volitional act cabins what conduct constitutes infringement and what does not. While a person's direct interaction with a computer to copy a work into its memory is a volitional act, the subsequent automatic processes (e.g., computer-based processes) initiated at the request of third party users are not acts of infringement attributable to the original uploader because they did not involve her direct, contemporaneous involvement with any violation of Section 106 subsequent to the one and only time she saved the file on the computer. In analyzing when an infringement claim accrues for purposes of § 507, a court essentially asks what did the defendant ***do***, and ***when*** did they do it?

Under the Copyright Act's statute of limitations, "[n]o civil action shall be maintained ... unless it is commenced within three years after the claim accrued." 17 USC § 507(b). Generally, a claim "accrues" when a plaintiff "has a complete and present cause of action." Petrella v. Metro-Goldwyn-Mayer, Inc., 572 U.S. 663, 670 (2014). A copyright infringement claim in particular accrues "when an infringing ***act*** occurs." Id. (emphasis supplied). Notably, there is no discovery provision in the Copyright Act.[13] In Petrella, Justice Ginsburg also observed that Section 507 "bars relief of any kind for ***conduct*** occurring prior to the three-year limitations period." Id. at 667 (emphasis supplied). Consistent with Petrella, the Eleventh Circuit has held that "an ordinary copyright infringement claim ... accrues for each infringing ***act***." Webster v. Dean Guitars, 955 F.3d 1270, 1276 (11th Cir. 2020) (emphasis supplied). What is clear from Petrella and Webster is

---

[13] As Justice Scalia explained, "[t]he injury-discovery rule ... is bad wine of recent vintage. Other than [the Court's] recognition of the historical exception for suits based on fraud ... [the Court] ha[s] deviated from the traditional rule and imputed an injury-discovery rule to Congress on only one occasion." TRW Inc. v. Andrews, 534 U.S. 19, 37 (2001) (Scalia, J., concurring); Foudy v. Indian River Cnty. Sheriff's Office, 845 F.3d 1117, 1123 (11th Cir. 2017) (same).

that a cause of action for copyright infringement requires some actual conduct by the accused, and when that conduct occurs, a plaintiff's claim accrues at that moment, thus triggering the running of the statute of limitations. Discovery of a prior act of infringement—especially one outside the three-year statute of limitations—is not the moment of accrual. Prather v. Neva Paperbacks, 446 F.2d 338, 339 (5th Cir. 1971) (calculating the limitations period based on the *occurrence* of the alleged injury).[14] Anything less than the act of an online infringement would nullify congressional intent to limit infringement actions and further eviscerate the "should have known" component of accrual, even assuming a plaintiff may rely on knowledge to start the running of the statute of limitations.

The facts here are most closely aligned with those in Wolf v. Travolta.

In Wolf v. Travolta, 167 F.Supp.3d 1077 (C.D. Cal. 2016), a plaintiff brought suit for copyright infringement. She alleged that she was not aware of the defendants' infringement until November 25, 2012. Id. at 1093. And she then filed suit on February 6, 2014. Id. at 1082. However, the evidence showed that "the allegedly infringing program service guide was published on the Inclusion Films website in or about April 2010, 'where it remained without substantial revisions until it was removed in response to this litigation.'" Id. at 1099. The court held that "[t]he fact that the allegedly infringing document—published in 2010, outside the relevant three-year window— remained on defendant's website through 2014 does not give rise to a discrete claim accruing within the three-year window." Id. at 1099 n.13. There, the court concluded that the separate-accrual rule under §507, and Petrella and Klehr meant that the initial violation of uploading the document to the defendant's website was complete, even if ongoing, prior to the statute of

---

[14] Adopted as the precedent of this Circuit by *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

limitations period. Id. The result reached in Wolf, as supported by Petrella and Klehr, obtains here.

There is no dispute that the defendants are alleged to have reproduced the MLS Image in March 2018 on their website, and ceased making any changes to the site as of June 14, 2018. Def. Statement of Undisputed Fact [ECF 109] at ¶¶ 20-21. The website was publicly accessible, and the image was displayed not later than April 19, 2018, by virtue of the fact that the Internet Archive had crawled the website and stored its own copy of the image. Am. Comp. [ECF 40] at ¶ 26. Consequently, the statute of limitations under §507 ran not later than June 14, 2021, but AAP did not bring suit until August 2, 2021.

Furthermore, AAP has previously brought suit on the Registered Photograph and has known of online infringements of it prior to the limitations period. In 2018 it sued Lang Realty Inc., Pl. Am. Interrogatory responses [ECF 101] at no. 8, and included alleged that it had discovered that agent's use of the same image by June 6, 2018, where it attached a screen capture of the image existing on Lang's website and a date in the lower righthand corner of that screen capture. See Exhibit B to Compl., [DE 1-2] at p.44 of 366 Affordable Aerial Photography Inc. v. Lang Realty, Inc., no. 18-CV-81569 (S.D. Fla. Nov. 15, 2018). Accordingly, AAP has clearly been on notice of online copyright infringement of the Tillinghast property image prior to August 2, 2018. It is therefore charged with constructive knowledge of the defendants' website, which was also online, publicly available, and indexed by search engines together with the images on their site. Even assuming AAP is entitled to claim ignorance (which it is not, pursuant to Petrella) the discovery rule is no shelter to the running of the statute; it was not tolled. Thus AAP's claims fail.

Indeed, the entire "purpose of the statute of limitations is to limit exposure [of a wrongdoer] to a certain fixed period of time following the occurrence of those acts." Toussie v. United States, 397 U.S. 112, 114 (1970); see also Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538, 554 (1974)

("the right to be free of stale claims") (quoting Order of R.R. Telegraphers v. Ry. Express Agency, 321 U.S. 342 (1944)). Thus, the statute begins to run based on the defendant's conduct, not the plaintiff's direct knowledge. Prather, 446 F.2d at 339. Were it otherwise, a plaintiff could remain willfully ignorant of its claim until she deemed it suitable to go looking. The statute would then become a unilateral instrument of a claimant, and not the balanced, social stability-enhancing law it is meant to be. Johnson v. Ry. Express Agency, Inc., 421 U.S. 454, 463-64 (1975) ("the length of the period [of a statute of limitations] allowed for instituting suit inevitably reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones"); Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538, 554 (1974) ("statutory limitation periods are 'designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber"); Chase Sec. Corp. v. Donaldson, 325 U.S. 304 (1945) (statutes of limitation are "devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense" and "represent a public policy about the privilege to litigate").

This is particularly so here, where an enterprising seasoned copyright litigator such as AAP simply decides when it is convenient to search for online infringement of their works and then bring suit, because it would never have to worry about the statute of limitations.[15] So long as the image simply existed on a website without its authorization at any time in the preceding three years, it wouldn't matter how long ago the copy was originally made; it wouldn't matter when there was an actual ***act*** by a defendant. That pattern of conduct is both antithetical to the public policy reasons for statute of limitations, and directly contravened by the plain language of the

---

[15] The existence of AAP's images online is not the only matter for which it is willfully ignorant. AAP's corporate representative claimed total ignorance of the existence of any other real estate photographers. Full stop.

Copyright Act. Innocent digital infringers would essentially be left with no statute of limitations defense whatsoever, and would remain unknowingly subject to a shakedown infringement claim irrespective of the passage of time from when the person actually uploaded the image to a website. AAP and other copyright trolls rely on this very argument to their extensive pecuniary benefit. But that argument is plainly wrong.

Defendants engaged in no volitional conduct occurred within three years prior to AAP's suit. Trends Realty's changing the contact information on the website was not volitional conduct of *infringement* because it had nothing to do with either reproducing, performing, displaying, or making a derivative of the photo. 17 U.S.C. § 106; Wolf, 167 F.Supp.3d at 1099 n.13. Trends Realty's conduct was the equivalent of a shop changing the name of the store's manager on the entryway without touching an adjacent window advertisement containing an infringing image. While the two are both visible to passersby, replacing a name in no way was volitional conduct with respect to the long-preexisting window ad.[16] The conduct occurred only once when the ad was originally placed.

In this case, the sole possible volitional act of infringement—uploading the MLS image to homesofthepalmbeaches.com website—occurred on March 14, 2018, and the website was unchanged starting June 14, 2018. Def. Statement of Undisputed Fact [ECF 109] at ¶¶ 20-21. The image was not modified thereafter. Id. The image did not move locations. Id. It was placed and remained there without any further interaction from the defendants until removed after this suit was brought. Id. The very first "display" of the MLS image occurred not later than April 2018 as

---

[16] Extending the analogy further, suppose the window ad also had a motion detector that illuminated and made visible the ad in response to foot traffic on the sidewalk. That automatic process—as between the machine displaying the ad and the third-party visiting the storefront—is not an extension of the initial volitional act of displaying the illuminated ad in the window.

a result of the defendants' web site (and the photo) being archived by the Wayback Machine. [ECF 40] at ¶ 26. Thus, there cannot be any new harm for subsequent displays "over and above" the harm caused by the first display of the image. Three years from the latest date was June 14, 2021, and AAP did not file this infringement action prior to that date. Consequently, the statute of limitations ran.

Furthermore, AAP cannot claim any tolling of the statute because the infringement was not concealed. Foudy v. Miami-Dade Cnty., 823 F.3d 590, 593-94 (11th Cir. 2016) ("in the absence of ... a self-concealing violation, the court should not graft a discovery rule onto a statute of limitations"). In the Eleventh Circuit, the continuing violation doctrine is limited "to situations in which a reasonably prudent plaintiff would have been unable to determine that a violation had occurred." Ctr. for Biological Diversity v. Hamilton, 453 F.3d 1331, 1335 (11th Cir. 2006). And courts must be careful to "distinguish[] between the continuing effects of a discrete violation and continuing violations" themselves. Id.; accord Petrella, 572 U.S. at 671 n.6 ("[s]eparately accruing harm should not be confused with harm from past violations that are continuing"); Klehr, 521 U.S. at 190 (no bootstrapping claims). The Supreme Court has also noted that the continuing offense doctrine "should be applied only in limited circumstances" because "for all practical purposes, [it] extends the statute beyond its stated term." Toussie v. United States, 397 U.S. 112, 115 (1970). At best, only the "effects" of the defendants' initial volitional act were felt after that discrete act, purely as a consequence of third party users navigating to the defendants' website.

When properly construed, §507 demonstrates that a cause of action for copyright infringement accrues only upon a discrete affirmative act by a human being at a specific moment in time. Automatic processes of a computer server, even if set in motion by a person, do not constitute separate, discrete volitional acts of infringement thereafter. Instead, a server having a

copy of a registered work which is displayed to internet users upon *their* request to that machine cannot be, as a matter of law, a volitional act retroactively attributable to the original uploader indefinitely so as to completely eviscerate the statute of limitations. Because the only affirmative act of infringement allegedly taken by the defendants occurred more than three years before AAP brought this suit, the statute of limitations bars its claim in its entirety.

## IV.    CONCLUSION

AAP cannot reasonably contend that it has a registration to the MLS Image, or that the defendants had access to or copied the Registered Photograph. It knew of the different images, registered and brought suit on just one. That was AAP's decision, and it was a fatal one by the requirements of the Copyright Act. It cannot prove its compensatory damages. The statute of limitations has run out. Judgment for the defendants is proper as a matter of law.

**WHEREFORE**, defendants Trends Realty USA Corp. and John Abdelsayed respectfully request the Court

(i)     grant this motion;

(ii)    find that Affordable Aerial Photography, Inc. does not have a copyright registration to the MLS image, and that defendants did not copy the registered image;

(iii)   find that Affordable Aerial Photography has not met its burden to comply with 17 U.S.C. §411(a);

(iv)    find that whatever originality exists in the registered photograph is thin, and copying the MLS image does not necessarily copy any protectable elements of the registered photograph;

(v)     find that Affordable Aerial Photography cannot prove any actual or profits

damages;

(vi)    find that Affordable Aerial Photography's infringement claim accrued at least by June 14, 2018;

(vii)    find that Affordable Aerial Photography's claims are time-barred by §507;

(viii)    enter a final judgment against plaintiff and in favor of defendants; and

(ix)    for such further relief as the Court deems just and proper.

## **REQUEST FOR HEARING**

Pursuant to Local Rule 7.1(b)(2), defendants respectfully request oral argument at a hearing on the matters raised in this motion given the unique nature of the issues presented, especially with regard to the interrelationship of different legal doctrines (e.g., volitional conduct rule and statute of limitations), and the anticipated dispute by plaintiff of what material facts are undisputed. Defendants believe a hearing will help the Court understand and address these issues.

Defendants estimate the time required for oral argument to be one hour.

                        __/s/ Griffin Klema_____
                        Griffin C. Klema, Esq.
                        Fla. Bar No. 100279
                        Griffin@KlemaLaw.com
                        **Klema Law, P.L.**
                        PO Box 172381
                        Tampa, FL 33672
                        420 W. Kennedy Boulevard
                        Tampa, FL 33606
                        Telephone: 202-713-5292
                        Attorney for Defendants &
                        Counterclaimants