IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 9:21-cv-81331-AMC

AFFORDABLE AERIAL PHOTOGRAPHY,
INC.,

    Plaintiff,

v.

JOHN ABDELSAYED and
TRENDS REALTY USA CORP,

    Defendants/Third-Party Plaintiff,

v.

ROBERT STEVENS,

    Third-Party Defendant.

_____

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE IN OPPOSITION
TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff[1] hereby files this reply to Defendants' Response in Opposition to Plaintiff's Motion for Partial Summary Judgment (the "Opposition Memorandum") [D.E. 119].

**INTRODUCTION**

The Opposition Memorandum attempts to fabricate genuine issues of material fact in an effort to distract the Court from Defendants' unquestionable copying of an image created and owned by Plaintiff. Try as they may, Defendants cannot escape unequivocal legal authority establishing that: (a) as the owner of the Original Work, Plaintiff has an unequivocal right to create

---

[1] Terms not defined herein shall have the meaning ascribed to them in the Motion.

1

derivative works such as the Derivative Work; (b) Defendants copied the Derivative Work and published such on Abdelsayed's website; and (c) ownership + unauthorized copying = infringement. Defendants cannot escape this simple conclusion through their reliance on counsel (Mr. Klema) as an apparent pseudo-expert on photography, nor can they do so through misstatements of governing law. In short, Defendants have done nothing to avoid entry of partial summary judgment against them on Plaintiff's claims.

## ARGUMENT

### I. Plaintiff Made Out a Prima Facie Case of Copyright Infringement

Plaintiff adopts and incorporates by reference its arguments set forth in the Motion[2] and its opposition to Defendants' Motion for Summary Judgment.[3] While the Opposition Memorandum drones on ad nauseum about copying and originality, these issues were already thoroughly addressed by Plaintiff in its Motion and opposition to Defendants' Motion for Summary Judgment.[4]

There is no dispute that Plaintiff owns a valid copyright for the Original Work.[5] Nor does the Opposition Memorandum appear to dispute that the Derivative Work is a "derivative" of the Original Work that Plaintiff had the absolute right to create. Rather, the Opposition Memorandum goes to painstaking lengths to misapply various legal authority in arguing that the Derivative Work

---

[2] Plaintiff's Motion for Summary Judgement as to Liability, at 4–11 [D.E. 109].

[3] Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, at 2, 9–10 [D.E. 115].

[4] See Plaintiff's Motion for Summary Judgement as to Liability, at 4–11 [D.E. 109]; Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, at 2, 9–10 [D.E. 115].

[5] The "Original Work" is Plaintiff's photograph referred to in the Amended Complaint as "12235 Tillinghast Cir front nite 2016 AAP." See Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment [D.E. 115].

is somehow not original or that the Court should adhere to standards having nothing to do with the issue before it – essentially attempting to fit a square peg in a round hole.[6]

## II. Defendants Not Only Misapply the Compulife Software Case, But Also Failed to Carry Their Burden as Explained in the Case

The Opposition Memorandum heavily relies on Compulife Software in arguing that Plaintiff failed to identify the protectable elements of its photograph. Defendants' argument, however, is puzzling and indicative of a failure to actually read Compulife Software. Indeed, even if the computer source code analysis is applicable here, it was Defendants' burden (not Plaintiff's) to prove that copied elements are unprotectable:

> [W]e come to the magistrate judge's first error. In his opinion, the magistrate judge implicitly placed on Compulife the burden of proving that the elements of its HTML code that the defendants copied were protectable. In particular, he faulted Compulife for having "made no attempt to identify the protectable elements of the 2010 HTML Source Code." Compulife Software, 2018 U.S. Dist. LEXIS 41111, at *38. Although we haven't previously done so, we now clarify that after an infringement plaintiff has demonstrated that he holds a valid copyright and that the defendant engaged in factual copying, the defendant bears the burden of proving—as part of the filtration analysis—that the elements he copied from a copyrighted work are unprotectable.

Compulife Software, Inc. v. Newman, 959 F.3d 1288, 1305 (11th Cir. 2020). Plaintiff has sufficiently demonstrated that it held a valid copyright. Plaintiff has also proven that Defendants engaged in factual copying, as demonstrated by the Derivative Work appearing on their website. Therefore, assuming Compulife Software even applies, Defendants bear the burden of proving (as part of the filtration analysis) that the elements they copied from a copyrighted work are unprotectable. Unless Defendants are proposing that this Court blatantly ignore what Defendants

---

[6] The "Derivative Work" is the result of the editorial revisions made to the Original Work (cloning five more bougainvillea flowers onto the bush, cropping the photograph, and adjusting the tilt). See id.

3

deem "controlling precedent,"[7] then Defendants bear the burden of proving the elements they copied are not protectable, which they have fallen painfully short of.

Even assuming arguendo that it was Plaintiff's burden to perform the filtration analysis (it was not), Defendants' argument still fails as Plaintiff has explained the protectable elements of both the Original Work and the Derivative Work. The Stevens Decl. details how the photograph was created, edited, merged, and ultimately further edited to become the Derivative Work. The Derivative Work had editorial revisions—it had five additional bougainvillea flowers cloned onto bushes, an adjusted tilt, and was cropped to give the photo a more zoomed in appearance. Defendants are essentially asking the Court – without having proffered *any* expert testimony – to substitute its own judgment for that of the U.S. Copyright Office and find that the Derivative Work is somehow so devoid of creativity/originality that it fails to satisfy the tremendously low bar applicable to such standards.  The Court should decline to do so.

Defendants' argument is nonsensical as it asks the Court to assume that: (1) the Original Work's copyright does not fully extend to the Derivative Work; (2) Plaintiff's editorial revisions are unprotected; (3) Plaintiff's editorial revisions need to be "filtered" out.  But even if these assumptions are correct, the act of 'filtering out' the revisions would leave the Court with two ***identical photos.***  If Defendants were to compare a "filtered" version of the Derivative Work with the Original Work, the photographs would match. There is no question that the Original Work has a valid copyright. If the filtered Derivative Work and Original Work are identical, then it follows that all materials protected in the Original Work would be protected in the filtered Derivative Work. Therefore, Defendants copied copyright protected material.

---

[7] Opposition Memorandum, at 4 [D.E. 119].

Second, even though Defendants include an entire block quote from Compulife Software, they somehow manage to glaze over the law. Defendants carry the initial burden to prove that some or all of the copied material is unprotectable.[8] Defendants have failed to carry their burden. Notably, the Opposition Memorandum asserts that "Trends Realty set forth its filtration analysis and evidence in its motion for summary judgment, which it adopts and incorporates by reference and extends further herein."[9] Incredibly, Defendants have misquoted their own motion. Upon a simple "Ctrl f" search, the words "filtration," "filter," and "Compulife" do not appear in their motion once. Defendants cannot seriously expect the Court to synthesize and impute meaning into their motion for summary judgment to now support a new legal theory.

Importantly, Defendants are arguing for application of a standard never used by the Eleventh Circuit in the context of photography (such as here). The Eleventh Circuit has followed Compulife Software only twice.[10] On the first occasion, Compulife Software was applied to a computer code case. See Compulife Software v. Rutstein, No. 9:16-CV-80808-REINHART, 2021 U.S. Dist. LEXIS 160881 (S.D. Fla. July 12, 2021); on the second occasion, Compulife Software was applied to a trademark case. See It Works Mktg. v. Melaleuca, Inc., No. 8:20-cv-1743-T-KKM-TGW, 2021 U.S. Dist. LEXIS 80298 (M.D. Fla. Apr. 27, 2021). It is thus entirely unclear that the 'filtration' analysis urged by Defendants is even applicable here.

### III. The Court *Must* Disregard Mr. Klema's Declarations and Attempts to Inject Himself as an Expert

Defendants' counsel (Griffin Klema, Esq.) has submitted declarations in opposition to the

---

[8] Compulife Software Inc. v. Newman, 959 F.3d 1288, 1306 (11th Cir. 2020) ("[T]he defendant may seek to prove that some or all of the copied material is unprotectable. If the defendant carries this burden as to any portion of the copied material, that material should be filtered out of the analysis before comparing the two works.").

[9] Opposition Memorandum, at 8 [D.E. 119].

[10] The Eleventh Circuit distinguished Compulife Software in Khoury v. Miami-Dade Cty., No. 20-21841-CIV-JEM, 2021 U.S. Dist. LEXIS 20065 (S.D. Fla. Jan. 28, 2021).

Motion for Partial Summary Judgment [D.E. 117] and in support of Defendants' own Motion for Summary Judgment [D.E. 108], both of which are rife with factual contentions about Mr. Klema's own 'investigation' and conclusions with respect to material issues in this lawsuit.  Mr. Klema has likewise peppered the Opposition Memorandum with factual assertions that the works at issue are "mechanically created,"[11] having "exceedingly thin protection"[12] and a "purpose-driven front exterior image of a home, constrained by regulatory and industry expectations."[13]  These declarations and assertions are improper, may not be considered on summary judgment, and are contrary to Mr. Klema's obligations under the Florida Rules of Professional Conduct.  See, e.g., Hardemon v. Fish, 325 So. 2d 411, 412 (Fla. Dist. Ct. App. 1976) ("[I]t was inappropriate for counsel for the grantee [Fish] in the trial court to give an affidavit in support of the motion for summary judgment, because this is contrary to Canon 5, EC 5-9, DR 5-102, Code of Professional Responsibility.  Counsel would not have been permitted to testify at the trial because of these authorities and, therefore, the trial judge should not have considered his affidavit as to the condition or competence of the grantor at the time he executed the deed.") (internal citations omitted).  As the Court knows, Florida Rule of Professional Responsibility 4-3.7 prohibits an attorney from acting as an advocate at trial in which he/she is likely to be a necessary witness on behalf of his/her client (unless a specified exception applies).  Per Hardemon, Mr. Klema cannot avoid this prohibition by attempting to inject his own factual testimony into the summary judgment record and therefore make himself a material witness on behalf of his clients.  The Court must disregard Mr. Klema's assertions concerning dead pixels, the number of flowers on the photographs, the 'mechanical' nature of Plaintiff's photography, etc.  For reasons that only Mr.

---

[11]  Opposition Memorandum, at 6 [D.E. 119].
[12]  Id. at 10.
[13]  Id. at 11.

Klema can explain, he chose to inject himself as a material witness in this lawsuit. This was improper and plainly runs afoul of the Florida Rules of Professional Conduct.

### IV. The Stevens Declaration is Credible and Admissible

The Opposition Memorandum takes artistic liberties in conveying the facts as set forth in the Motion. The Original Work is a blend of three raw photos. There is nothing deceptive about blending the same photograph that was captured from the exact height and angle to optimize the resulting exposure. Plaintiff is at a lack of words to respond to Defendants' assertion that the Original Work was not suitable for Mr. McGinnis' needs. How Defendants claim to know what McGinnis deemed "suitable" is mind boggling. Additionally, there is a chasmic difference between "suitable" and "preferential." McGinnis and Plaintiff have a long-standing relationship due to the quality of work Plaintiff always delivers. Plaintiff created a derivative work to better meet its client's needs, which is supported by basic copyright law.[14]

Defendants' assertion that Mr. Stevens (Plaintiff's principal who Defendants declined to take a deposition of) lacks personal knowledge is bold indeed. Mr. Stevens is the only declarant that has personal knowledge of the facts and of professional photography (unlike Defendants' counsel who does not have a modicum of expertise yet continues to provide his opinion). There can be no individual with more personal knowledge of these facts than the Plaintiff's principal photographer, founder, and sole shareholder. Additionally, Defendants cannot despair that Stevens' declaration "contains testimony to which defendants cannot respond without further discovery."[15] Defendants had every opportunity to take Mr. Stevens' deposition – indeed, dates were set aside for such (which Defendants never sent a notice of deposition for) and weeks

---

[14]   17 U.S.C. § 501; 17 U.S.C. § 101.

[15]   Opposition Memorandum, at 13 [D.E. 119].

thereafter undersigned counsel still offered Defendants the opportunity to take Mr. Stevens' deposition (which was again ignored). Defendants cannot now complain about needing more discovery given their own failure to follow through on a requested deposition.

Defendants allege that "AAP makes the extraordinary logical leap that (A) because the defendants own a website and published a copy of the MLS Image that (B) "the second element of prima facie copying—substantial similarity—is also satisfied." [ECF 109] at 11."[16] However, Defendants sloppily extract Plaintiff's argument to fit their own agenda.

In context, Plaintiff argued "[i]t is beyond dispute that Abdelsayed owns the https://www.homesofthepalmbeaches.com website and published a copy of the Derivative Work thereon. The second element of prima facie copying – substantial similarity – is also satisfied. Defendants did not edit/modify the Derivative Work – they copied it in its entirety and displayed the Derivative Work on their https://www.homesofthepalmbeaches.com website. Plaintiff makes clear that Abdelsayed owned the https://www.homesofthepalmbeaches.com website to lay a proper foundation. The Derivative Work appeared on the website, showing that Defendants copied and displayed it. Plaintiff makes no leap that substantial similarity was satisfied where Plaintiff explained **in the next sentence (that Defendants' chose to omit)** that Defendants made no edits or modifications to Plaintiff's Work prior to displaying it on Abdelsayed's website. To use Defendants' terminology, Plaintiff's predicate A was never intended to lead to predicate B. Defendants seem to just apply laws and facts how they see fit, regardless of veracity.

Defendants contend that the '12235 Tillinghast Cir front nite 2016 AAP.jpg image has a "Date created" date of January 8, 2022, at 2:19 PM. [ECF 104-5] at 4. Defendants' dubious recitation of "facts" to the Court, based on their own exhibit, should not be tolerated. If the Court

---

[16] Id.

looks at [ECF 104-5] at 2, it will see that the version of the image found in Adobe Photoshop Lightroom – the program Plaintiff uses – the creation date is January 4, 2016, at 8:09 PM.[17] The date switches upon being found on Defendants' counsel's computer. Plaintiff does not purport to know what opposing counsel did on his own computer that resulted in two different dates, six years apart.[18] Moreover, the notion that the Derivative Work was created on January 8, 2022 defies common sense.[19] Defendants do not dispute that the Derivative Work was published to Abdelsayed's website in *April 2017* or that Abdelsayed copied the Derivative Work from a *2016* MLS listing for the Property.[20] It is somewhat difficult to imagine how the Derivative Work was created six (6) years after its publication in the MLS listing, but that is what Defendants' counsel wants the Court to believe.[21]

Defendants turn their nose up at the facts that they simply do not like. Plaintiff believes it cloned five flowers and provided demonstrative evidence proving such.[22] It is unclear how Defendants arrived at their determination that eight flowers were cloned, though, even if Mr. Klema is a proper witness (he is not), a difference of three (3) miniscule flowers hardly changes the analysis. Further, Stevens directly acknowledged that the saturation did change, but it is unclear when such an alteration occurred.[23] Again, Mr. Stevens is a professional photographer that has taken tens of thousands of photographs both before and after photographing the Tillinghast property in 2016. That Plaintiff may be mistaken on 5 vs. 8 flowers or cannot recall specifically

---

[17]   ECF 104-5, Exhibit A-5, at 2, 4.
[18]   Stevens Decl., July 8, 2022, at ¶ 2–3.
[19]   Id. at ¶ 4.
[20]   Id.
[21]   Id.
[22]   Stevens Decl., July 1, 2022, Exhibits C, D [D.E. 115-2].
[23]   Id. at ¶ 26.

how the night-sky saturation may have been edited is hardly the type of 'material fact' that precludes entry of summary judgment in Plaintiff's favor. Plaintiff adopts and incorporates by reference and extends further herein its previous qualm with opposing counsel serving as a colorologist and dissecting the photographs based on his own opinion of what is "discernible to the naked eye" and his analysis on saturations and pigmentations.

Contrary to Defendants' contentions, Plaintiff's corporate representative never testified that AAP's customers can sublicense. See Dep. of Rymarski [ECF 100-1] 24:8-24:11 ("What's your understanding of AAP's clients not being permitted to sublicense rights to the photographs? I don't know."). Plaintiff cannot remotely fathom how Plaintiff's corporate representative responding, "I don't know" morphed into Defendants' assertion that Plaintiff's "corporate representative, . . ., testified that its customers can sublicense photographs."[24]

Defendants go to great lengths explaining why this matter should not be before a jury.[25] Plaintiff agrees. Plaintiff is requesting this Court grant summary judgement as to the issue of liability. There is no genuine issue of material fact for a jury to decide with respect to liability. Plaintiff owned a valid copyright, which Defendants wrongfully copied.

## CONCLUSION

As set forth above and in the Motion for Partial Summary Judgment, Plaintiff respectfully requests that the Court enter an Order: (a) granting Plaintiff's motion for Partial Summary Judgement; (b) awarding Plaintiff its reasonable attorneys' fees/expenses incurred in bringing this Motion; and (c) for such further relief as the Court deems proper.

---

[24] Opposition Memorandum, at 17 [D.E. 119].

[25] Id. at 9–10.

|  |  |
|---|---|
| Dated: July 8, 2022. | COPYCAT LEGAL PLLC<br>3111 N. University Drive<br>Suite 301<br>Coral Springs, FL 33065<br>Telephone: (877) 437-6228<br>dan@copycatlegal.com<br>james@copycatlegal.com<br>lauren@copycatlegal.com<br><br>By: /s/ Daniel DeSouza, Esq._____<br>      Daniel DeSouza, Esq.<br>      Florida Bar No.: 19291<br>      James D'Loughy, Esq.<br>      Florida Bar No.: 0052700<br>      Lauren M. Hausman, Esq.<br>      Florida Bar No.: 1035947 |

## CERTIFICATE OF SERVICE

I hereby certify that on date, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will electronically serve all counsel of record.

/s/ Daniel DeSouza___

Daniel DeSouza